## No. 11,624.

W. C. RAYMOND ET AL., COMMISSIONERS, VS. EDWARD C. PALMER.

Property mortgaged to secure paper held by a bank as collateral for a loan, which is adjudicated at tax sale to a person interposed by the mortgagor, though not primarily discharging the mortgage, may become the vehicle through which a *prima facie* title is passed to the bank, through the instrumentality of the person who is president, with the concurrence of the mortgagor.

APPEAL from the Civil District Court for the Parish of Orleans. Théard, J.

*William S. Benedict*, for Plaintiffs, Appellees, cites: 25 Cal. 135; Spelling on Priv. Corp., Vol. 1, p. 219, Sec. 197; *Id.*, Secs. 199, 429, p. 459; 42 An. 618; 2 An. 211; 4 An. 416; 32 An. 962, 979; 33 An. 1370; 28 An. 460, 111; 34 An. 360; 29 An. 293; 46 An. 215; 35 An. 196, 276; 38 An. 74; 35 An. 743, 744; 34 An. 1140; 30 An. 853; 40 An. 514; 41 An. 425.

*Brown & Choate*, for Defendant, Appellant, cite: 15 An. 676; 65 Cal. 76; 14 Mich. 164; 7 An. 617; 4 R. 278; 5 An. 550, 567; 6 La. 204; 39 An. 455; Bigelow on Estoppel, 471; 38 An. 102; 93 U. S. 335.

Submitted on briefs March 12, 1895.
Opinion handed down April 22, 1895.

The opinion of the court was delivered by

WATKINS, J.    The commissioners liquidating the affairs of the Louisiana Savings Bank and Safe Deposit Company represent that several certain squares .of ground in the city of New Orleans, of which the defendant is in possession as apparent owner, under an act of conveyance, bearing date 23d of May, 1877, are in truth and fact the properties of said corporation, and that it is necessary, for the liquidation and settlement of the affairs of the corporation, that they be judicially recognized and decreed the owners thereof.

The defendant's answer is a general denial, and from a judgment in favor of the plaintiffs the defendant has appealed.

The averment of the plaintiffs' petition is that although these properties stand ''in the name of Edward C. Palmer, yet the same was in truth and fact and is the property of said corporation of which petitioners are the commissioners for the purpose of .liquidating its affairs.''

They represent that said Edward C. Palmer has declared the said property to be the property of said late corporation in a certain inventory of the property and effects of said corporation, made by Andrew Hero, notary, '' by order of court '' in the cause entitled '' In the matter of the Louisiana Savings Bank and Safe Deposit Company, No. 10,046 on the docket of the Fifth District Court of the parish of Orleans, now transferred and numbered 882 of the docket of this Honorable Court ''—that is to say, the Civil District Court of said parish.

The act of sale from J. B. Guthrie to E. C. Palmer bears date May 3, 1877, the stated consideration therefor being one thousand dollars in cash.

That act of sale recites that the vendor acquired title by purchase at a tax sale made by the State tax collector on the 3d of June, 1876, for the unpaid taxes on said property for the year 1874.

The plaintiffs' theory is that durlng the time Van Norden was president of the Savings Bank, he discounted with the bank his notes for thirty thousand dollars, and mortgaged the property in suit as security therefor.

That Van Norden was succeeded as president by the defendant, Palmer, and during his administration the property mortgaged was sent to sale for its delinquent taxes and purchased by J. B. Guthrie, at the instance and request of Van Norden. That Guthrie subsequently executed a conveyance to Palmer, likewise at the instance of Van Norden, who still remained, and remains a debtor of the bank.

That J. B. Guthrie was a person interposed to take title without paying any portion of the purchase price, and conveyed to Palmer without receiving any consideration therefor.

That the object and intention of these transactions were to vest a legal title in the bank of the property mortgaged—the mortgage becoming thereby extinguished by confusion.

On being interrogated as a witness for the defendant in reference to the tax sale Guthrie explained that when the property was advertised for sale for taxes Van Norden told him that he had no money, and requested him to attend the sale " and buy it in," and that he did so and took the title in his name. That subsequently Van Norden returned him the money he had expended and requested that he execute a deed to Palmer of the property, and in conformity with his request he executed the title which is in evidence to the defendant without any consideration. That all of these transactions occurred after the defendant had become president of the bank.

Without looking any further into the evidence it would seem from the foregoing that Palmer's deed was without any consideration passing from himself to Guthrie, or Van Norden, and it is a reasonable inference therefrom that Van Norden and Palmer had adopted this arrangement as a convenient mode of changing the form of the bank's security, by investing it with title in lieu of a mortgage—the former being largely the debtor of the bank, and the latter being president at the time. Other testimony, however, tends to confirm the correctness of that inference.

The attention of one witness being attracted to the deed from Guthrie to Palmer was requested to state how it was that Van Norden as well as Palmer had signed the act, and his reply was that " Palmer came to his office with the tax title, with the act of sale thereto annexed, and ordered the sale to be made from Guthrie to him, stating that it was the property of the bank which he had bought in at tax sale in the name of Guthrie, and desired to have

it transferred to him." The witness further stated that he "suggested to Mr. Palmer that it would be better to have Mr. Van Norden sign it, so that he would be estopped from disputing the validity of the tax sale, and Mr. Van Norden being at the bank (he) took the act to him and he signed it as a witness, as in the act appears."

Again:

"Nothing was stated except that. No, sir; nothing beyond what I have said—that it was the property of the bank, bought in the name of Guthrie. Mr. Palmer himself gave me the *data* of this real estate to put in the inventory."

Palmer, as a witness, emphatically denies that the conveyance from Guthrie to him was for the benefit of the bank, but he affirms that he took the title "in his own right and for his own benefit." And he, at the same time, admits that he gave Guthrie no consideration for the property, and explains that the moving consideration was an indebtedness of Van Norden.

This witness then proposed to make an explanation, but plaintiffs' counsel objected on the ground (1) that under the general issue it is inadmissible to prove by parol evidence that an authentic act was false, or to show the want of genuineness of signature; (2) that the witness having been an officer of the bank at the time can not be permitted as a witness to shift his position to a contradictory one, so as to deny the legal effect of his acts and transactions, tending to vest a title in the bank, and sustain claim of ownership of the property in himself.

On the contrary, defendant's counsel insist upon their right to contradict the recitals of a public inventory and show "that its recitals are not correct."

The court ruled that in the absence of allegation of fraud parol proof is inadmissible to contradict "any declaration contained in the inventory referred to in the plaintiff's petition."

The ruling of the judge was distinctly based upon *the* inventory which is referred to in the plaintiffs' petition, and the quotation made from the petition shows it to have been an inventory which the defendant had caused to be made of the property and effects of the bank after it had suspended business and gone into liquidation upon *his own* representations. And that it was made in a judicial proceeding to which he was a party, and of a date several years after the execution of the deed to him by Guthrie.

The point made, and the ruling of the judge, had more direct reference to the fact that the inventory formed a component part of the judicial proceedings in which it was filed than to the simple recitals it contained within itself as an ordinary inventory.

On this line of demarcation the argument of counsel on either side has taken an altogether different course.

We are clearly of the opinion that the ruling of the judge *a quo* was correct. While it is true, as a general proposition, that an inventory, abstractly considered, is a *memorandum* merely, made *ex parte*, and binding no one by its recitals; but when, in the course of a judicial proceeding liquidating the affairs of a suspended bank, its former president, acting as one of the commissioners, causes an inventory to be filed therein, and to be homologated, its recitals take on the character of judicial admissions that are binding on him in a subsequent litigation to which he is a party.

It appears from the records in evidence that in 1879, while Palmer was president of the Louisiana Savings Bank, that corporation was put into liquidation, and, by a decree of court, commissioners were appointed to liquidate and settle up its affairs. That, in pursuance of that decree, an inventory was made of the effects and property of the bank, and filed in said proceedings to serve as the basis of the commissioners' bonds.

That subsequently, the commissioners filed their bonds predicated upon that inventory, and took and subscribed the oath required by law.

It further appears that the aforesaid inventory was executed on the 7th of July, 1879, and that it was homologated on the 22d of July, 1879, on the petition of the aforesaid commissioners, the defendant being one of them.

Amongst other items and entries in that inventory appear the following, viz.:

"Bills receivable.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

"W. Van Norden, his own order, 13th of May, 1871, at one year, twenty thousand dollars, eight per cent. interest.

"W. Van Norden, his own order, 23d of May, 1868, two years, ten thousand dollars, seven per cent. interest."

And in the margin opposite the foregoing entry is this remark, viz.:

"Interest paid to July 1, 1873, paraphed by E. G. Gottchalk, notary, May 13, 1875. Interest paid to July 1, 1873, paraphed by S. Magner, notary, 22d of May, 1868.

" Real estate mortgaged in these acts, now in the name of E. C. Palmer, under tax sale, and held for bank."

And in another entry is given a full and complete description of the real estate which is called for by the recitals of the deed from Guthrie to Palmer; and that entry is prefaced by this heading, viz.:

" Real estate hypothecated as security for the payment of the notes of W. Van Norden for thirty thousand dollars."

These recitals of that inventory fully confirm all that was affirmed by witnesses at the trial, viz.: that the real estate which was mortgaged to secure the indebtedness of Van Norden to the bank was sold at tax sale and afterward transferred to Palmer and is now " held for the bank."

The notary who passed and authenticated the inventory testified to the genuineness of the signature of Palmer as it appears thereto and stated that it was signed in his presence.

He also testified that the inventory was filed in the record of the insolvency of the bank in the Fifth District Court.

In the light of this evidence it is difficult to see any possible defence to the plaintiff's demand.

The claim of Palmer is fully met and answered by the recitals of the inventory he caused to be made under the circumstances detailed; in Folger vs. Palmer, 35 An. 743, it was held that the present defendant was bound by his previous judicial declarations as president of the bank that it was the owner of a note. In Henshaw vs. Stafford, 30 An. 853, it was held that a mortgagor can not buy in the mortgaged property at tax sale and divest the mortgage and acquire title free of incumbrance; and it must be equally true that such mortgagor can not, by such adjudication, through the instrumentality of an interposed person, convey an unencumbered title to another.

The defendant, Palmer, being present at the time of the tax sale of the mortgaged property, could acquire from the adjudicatee a *prima facie* title for the bank as mortgagee, with the concurrence of its debtor and mortgagor, which would at least estop and bar the assertion of title in himself.

. Judgment affirmed.